1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES HAYNES,                           No. C 09-0174 PJH

         Plaintiff,                **ORDER GRANTING IN PART AND
                                          DENYING IN PART DEFENDANTS'
   v.                                **MOTION FOR PARTIAL SUMMARY
                                          JUDGMENT**
CITY AND COUNTY OF SAN
FRANCISCO, et al.,

         Defendants.
_____/

     Defendants' motion for partial summary judgment came on for hearing before this

court on July 21, 2010.  Plaintiff, Charles Haynes ("Haynes"), appeared by his counsel

Ben Nisenbaum.  Defendants City and County of San Francisco, Heather Fong, and

Paulo Morgado (collectively "defendants") appeared by their counsel Sean Connelly.

Having carefully reviewed the parties' papers and considered the arguments of counsel

and the relevant legal authority, and good cause appearing, the court hereby GRANTS

the motion in part and DENIES it in part.

## BACKGROUND

     This is a police excessive force case, brought under numerous federal and state

laws.  Plaintiff Charles Haynes was involved in an altercation with San Francisco Police

Officer Paulo Morgado ("Morgado") on March 1, 2008, at around 2:00 a.m.  Complaint,

¶¶ 9-12.

A.    Specific Allegations

     On March 1, 2008, Haynes was working as a disc jockey at Zeke's Nightclub at

3rd and Brannan Streets in San Francisco.  Haynes depo. at 63.  According to Haynes,

he had consumed two to three alcoholic beverages that night but was not intoxicated.

Id. at 73-78.

At around 12:45 a.m., the police received a call about a disturbance outside. Morgado decl. ¶ 4.  At 1:15 a.m., the police received a number of calls about shots fired in the area and fights outside the club.  Id. at ¶ 3.

Haynes recalls leaving the club sometime between 1:00 a.m. and 2:00 a.m.  As he left, he claims that he crossed the street from the club to walk a woman to her car, and then walked back across the street.  Haynes depo. at 82.  According to Haynes, while walking back across the street, he passed two police officers, including Officer Morgado.  Id. at 93-94.  As he walked past the officers, Haynes claims that Morgado said, "Get off the fucking street, boy."  Haynes depo. at 97-98.  Morgado claims that he never used any racially derogatory language.  Morgado decl. ¶ 5.  In response, Haynes called Morgado a "fucking faggot" while walking back toward the club entrance.  Haynes depo. at 99.

At this point, Morgado started yelling and ran toward Haynes.  Id. at 103.  According to Haynes, Morgado shoved him into a wall on the outside of a building, calling him a "piece of shit," and arrested him.  Id. at 107-10.  The stories differ over what caused the actual arrest.  Haynes claims that the arrest and use of force was without cause.  Complaint, ¶ 16.  He also claims that the "fucking faggot" remark was the only thing he said to Morgado.  Haynes depo. at 100.  Morgado, on the other hand, claims that Haynes was intoxicated, that he resisted repeated commands to leave the street, that he made many additional offensive remarks, and that arresting him was for his own safety.  Morgado depo. at 195-205.

Haynes claims that as a result of the force used and the arrest, he suffered a scrape to his hand, a bump to his head, and emotional injuries.  Haynes depo. at 116-20.

Part of the incident was captured on video by Haynes' fellow DJ.  See Haynes Opposition, Exhibit D.  The video, however, picks up after Haynes and Morgado passed each other in the street, right as Haynes appears to utter "fucking faggot."  Morgado runs toward Haynes and starts screaming, accusing Haynes of calling him a "little bitch,"

ultimately pushing Haynes into the wall.  In the video, it is unclear what led Haynes to call Morgado a "fucking faggot."  It is also unclear whether Haynes made any other remarks toward Morgado and what Morgado said to Haynes prior to the derogatory remark.  Thus, while the video is useful evidence for evaluating the actual force that Morgado used, it is largely inapplicable to the issues posed for the purposes of this motion.

B.    Procedural Background

Haynes filed this action on January 14, 2009, against defendants City and County of San Francisco, former San Francisco Police Chief Heather Fong in her official capacity, Officer Morgado individually and in his official capacity, and numerous unnamed San Francisco police officers and policymakers ("defendants").

Haynes' complaint asserts eight causes of action: (1) a § 1983 claim of unreasonable search and seizure in violation of the Fourth Amendment, alleged against Officer Morgado and the doe officers; (2) a § 1983 Fourth Amendment Monell claim against Chief Fong and the doe policymakers; (3) a § 1983 Fourth Amendment Monell claim against the City and County of San Francisco; (4) a state law claim of assault and battery, alleged against Morgado and the doe officers; (5) a state law claim of false imprisonment and arrest, alleged against Morgado and the doe officers; (6) a state law claim of intentional infliction of emotional distress, alleged against Morgado and the doe officers; (7) a claim of violation of California Civil Code § 52.1, alleged against Morgado and the doe officers; and (8) a claim of violation of California Civil Code § 51.7, alleged against Morgado and the doe officers.

Defendants now seek summary judgment as to the § 1983 Monell claims against the City and Chief Fong, and the § 52.1 claim and § 51.7 claim against Morgado. Defendants also seek to file under seal the materials in support of their motion for partial summary judgment.

//

//

**DISCUSSION**

A.    Legal Standard

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celetox Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion.  See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.              00

B.    Analysis

Defendants' motion requires resolution of whether Haynes has sufficient evidence to raise genuine issues of material fact as to the elements of his § 1983 claims, § 52.1 claim, and § 51.7 claim.

    1.    Claims against the City and Chief Fong in her Official Capacity under 42 U.S.C. § 1983

defendants argue that Haynes' claims under 42 U.S.C. § 1983 against the City

and Chief Fong in her official capacity lack the evidentiary support necessary to establish municipal liability under Monell.  Haynes, however, argues that the city has had an informal policy and custom of indifference toward Officer Morgado's allegedly unconstitutional conduct.

Local governments are subject to liability under § 1983 where official policy or custom causes a constitutional tort.  See Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).  To establish a defendant's liability under § 1983 for a violation of constitutional rights, a plaintiff must show: 1) that the plaintiff possessed a constitutional right of which he or she was deprived, 2) that the municipality had a policy, 3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights, and 4) that the policy is the "moving force" behind the constitutional violation.  See Plumeau v. Schl. Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).

To survive summary judgment, a plaintiff must point to an express policy, practice, or custom, or provide evidence showing an inference that such policy, practice or custom exists informally.  See Waggy v. Spokane County, 594 F.3d 707, 713 (9th Cir. 2010).  A policy can be established if one of the following conditions are met: 1) "the city employee committed the alleged constitutional violations pursuant to the city's official policy or custom," 2) the alleged conduct was "a deliberate choice" made by an employee with final policymaking authority, or 3) an official with policymaking authority delegated or ratified the conduct.  Fuller v. City of Oakland, 47 F.3d 1522, 1534 (9th Cir. 1995) (citations and quotations omitted).

Several key caveats apply to informal municipal policies or customs.  For instance, proof of random acts or isolated incidents of unconstitutional action by a non-policymaking employee are insufficient to establish the existence of  a municipal policy or custom.  See McDade v. West, 223 F.3d 1135, 1142 (9th Cir. 2000).  However, a plaintiff may prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not

discharged or reprimanded.  See Gillette v. Delmore, 979 F.2d 1342, 1348 (9th Cir. 1992).

A local government may be liable for constitutional violations resulting from its failure to supervise, monitor or train its employees, but only where its failure amounts to "deliberate indifference" to the rights of the people with whom the local government comes into contact.  See City of Canton v. Harris, 489 U.S. 378, 388 (1989).  The failure to take remedial steps in response to constitutional violations involving excessive force can indicate a city policy or custom condoning excessive force.  Larez v. City of Los Angeles, 946 F.2d 630, 647 (9th Cir. 1991).  Evidence of a city's failure to train a single officer, however, is insufficient to establish a municipality's deliberate policy. Blankenhorn v. City of Orange, 485 F.3d 463, 484-85 (9th Cir. 2007).

In the context of a city's alleged indifference to its police officers violating the constitutional rights of its residents, providing evidence of past complaints against officers is generally insufficient to establish a policy or custom of indifference.  See, e.g., Maestrini v. City and County of San Francisco, 2009 WL 814510, at *11 (N.D. Cal. March 26, 2009) ("a list of prior complaints against an officer, without more, is insufficient to create a triable issue of fact regarding a municipality's policy of inadequately investigating or disciplining its officers"); Hocking v. City of Roseville, 2008 WL 1808250, at *5 (E.D. Cal. April 22, 2008) (holding that custom was not established where plaintiff failed to produce evidence showing that previous complaints should have resulted in discipline).

Defendants contend that the evidence shows that the City has a complex and effective system for monitoring complaints of misconduct by its officers, resulting in punishment and training where appropriate.  Defendants point to the City's policy regarding officer misconduct and the use of force: the "Early Intervention System" (SFPD General Order 3.19) – a system of tracking officer behavior and performance – and the guidelines on the use of force (SFPD General Order 5.01).   Defendants assert that some of the key components of the SFPD policy include tracking officers who

1    received complaints, identifying officers with patterns of misconduct, requiring officers to
2    report all uses of force, monitoring or training officers who report using force more than
3    three times in one quarter, and requiring supervising sergeants to review each use of
4    force.  Furthermore, defendants assert that the city charter requires the city to
5    investigate citizen complaints through an independent watchdog agency, the Office of
6    Citizen Complaints ("OCC").  See San Francisco City Charter § 4.127.  As part of this
7    system, the OCC is charged with investigating complaints against on-duty police
8    officers, and ensuring that each complaint is fully investigated.

9    Based on the facts and allegations, summary judgment is appropriate because
10   defendants have met their initial burden, yet Haynes has failed to meet his burden as
11   the nonmoving party to show evidence sufficient to create a triable issue of fact on the
12   issue of the City's policy.

13   The evidence Haynes points to in his opposition regarding the City's policy of
14   indifference to constitutional rights is:  1) the parties' stipulated facts as to previous OCC
15   complaints against Officer Morgado and 2) previous allegedly untruthful statements
16   made by Morgado.

17   As for the previous OCC complaints, the parties stipulated that in the five years
18   prior to the Haynes incident, Officer Morgado was the subject of twelve OCC
19   complaints.  Officer Morgado's conduct was found to be proper in all but one complaint,
20   for which he was reprimanded for discourtesy.  Haynes has failed to demonstrate that
21   the City inadequately addressed the complaints or that any of the complaints had merit.
22   Accordingly, these complaints are insufficient to show any city policy, formally or
23   informally.

24   The evidence concerning Morgado's previous statements also fails to raise a
25   triable issue of fact concerning the City's alleged policy.  Haynes first argues that Officer
26   Morgado was dishonest in his police report on the Haynes incident, suggesting the
27   video evidence contradicts his report.  In the report, Morgado stated that Haynes
28   appeared "extremely intoxicated," that Haynes said to Morgado, "Fuck you, little bitch,"

7

that Haynes came after Morgado aggressively, and that Morgado arrested Haynes for his own safety to protect him from passing vehicles, pushing him against the wall in an attempt to detain him.  Haynes argues that the video clearly contradicts the report, contending that Haynes did not appear intoxicated and that the video showed no traffic threat, among other inconsistencies.  Accordingly, Haynes argues that Morgado was dishonest in the report.  However, the alleged untruthfulness in Morgado's report is irrelevant because it obviously occurred after the incident and could not have been part of the cause of any constitutional deprivation suffered by Haynes.  See Maestrini, 2009 WL 814510 at *11 (holding that evidence of the City's response to incidents after the one in question could not have been the "moving force" behind the constitutional deprivation suffered by the plaintiff).

Haynes also suggests there is evidence of the City's indifference to Morgado's dishonesty in two previous cases implicating Morgado.  First, Haynes suggests that Morgado was dishonest in his deposition and incident report in a previous incident where he entered property without a warrant.[1]  Morgado apparently testified that a property manager told the security guards he could enter a residence without a warrant, even though the security guards said they never consented.  Haynes seems to suggest that this mere conflict of testimony is evidence of dishonesty.  Second, Haynes points to People v. Washburn, where the defendant accused Morgado of using excessive force.[2]  According to Haynes, Morgado claimed that the individual he detained broke his finger, but he later admitted that his finger had already been injured and may have been broken from punching the detainee.  Accordingly, Haynes concludes that Morgado was dishonest.

---

[1]The first amended complaint and order regarding summary judgment for Espinosa v. City and County of San Francisco, C-6-4686 JSW are attached to Haynes' opposition brief as exhibits F and G.

[2]A transcript of the preliminary hearing for People v. Washburn is attached to the opposition as exhibit H.

These previous incidents highlighted in the <u>Washburn</u> and <u>Sullivan</u> cases involve only a dispute between the testimony of Morgado and other witnesses.  Similar to the evidence of previous OCC complaints, Haynes offers no evidence that the City should have investigated Morgado's testimony or that its failure to do so caused the constitutional deprivations that Haynes allegedly suffered.  Furthermore, since all of the evidence concerns only incidents involving Officer Morgado rather than the San Francisco Police Department as a whole, Haynes cannot, as a matter of law, establish municipal policy or custom based on the City's alleged failure to monitor or supervise one individual.  <u>See Blankenhorn</u>, 485 F.3d at 484-85.

Accordingly, Haynes has failed to show any evidence sufficient to raise a genuine issue of fact regarding the policy or custom necessary to establish the City's liability under <u>Monell</u> pursuant to § 1983.  The court finds that summary judgment must be GRANTED in favor of defendants the City and Chief Fong as to the § 1983 claims.

        2.    <u>California Civil Code § 52.1 Claim</u>

Defendants move for partial summary judgment as to Haynes' § 52.1 claim, arguing that Haynes' evidence is insufficient to meet the elements of the claim.

Section 52.1 provides a right to relief when someone "interferes by threats, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state."  Thus, the elements of a claim for relief include 1) an act of interference with a legal right by 2) intimidation, threats or coercion.  <u>Jones v. Kmart Corp.</u>, 17 Cal. 4th 329, 334 (1998).

Courts in California are split on whether a Fourth Amendment excessive force or false arrest violation alone qualifies for the element of interference with a legal right under § 52.1.  One court in this district has held that "Section 52.1 is only applicable when a defendant intends by his or her conduct to interfere with a separate, affirmative right enjoyed by a plaintiff; it does not apply to a plaintiff's allegation of use of excessive force absent a showing that the act was done to interfere with a separate state or

1   federal constitutional right."  See Justin v. City and County of San Francisco, 2008 WL

2   1990819, at *9 (N.D. Cal., May 5, 2008)(holding that a false arrest claim was

3   insufficient for establishing violation of a separate right) (citing Jones, 17 Cal. 4th at

4   334).  On the other hand, another court in this district has held that the use "of law

5   enforcement authority to effectuate a stop, [and] detention (including use of handcuffs)  .

6   . . can constitute interference by "threat, intimidation, or coercion under [§ 52.1 ]."  Cole

7   v. Doe 1 thru 2 Officers of City of Emeryville Police Dept., 387 F.Supp.2d 1084, 1102

8   (N.D. Cal. 2005).  The latter decision relies on Venegas v. County of Los Angeles,

9   which held that allegations and evidence of unreasonable search and seizure,

10  accompanied by threats, intimidation, or coercion, are sufficient to withstand a demurrer

11  under § 52.1.  See 32 Cal.4th 820, 843 (2004).

12          Defendants argue that Haynes has failed to establish that Morgado's actions

13  interfered with any separate constitutional right other than the right to be free from

14  unreasonable search and seizure under the Fourth Amendment, which they argue is

15  insufficient to meet the requirement of a separate right under § 52.1.  Furthermore, they

16  contend that Morgado's actions did not violate Haynes' right to free speech, arguing that

17  calling a police officer a "fucking faggot" is outside of the scope of First Amendment

18  protection.

19          Under the Venegas standard, however, Haynes has presented sufficient

20  evidence to withstand summary judgment.  Haynes has shown evidence sufficient to

21  raise a genuine issue of material fact as to 1) threats, intimidation, or coercion and 2)

22  interference with his constitutional rights.  Haynes asserts that Morgado's actions

23  interfered with his First Amendment right to free speech and Fourth Amendment right to

24  be free from unreasonable search and seizure, on the basis of both the unlawful arrest

25  and the use of excessive force.  The act underlying the excessive force claim –

26  Morgado pushing Haynes into the wall, as depicted in the video – is sufficient evidence

27  to create a genuine issue of material fact as to whether Morgado acted with threats,

28  intimidation, or coercion.  As for whether such actions interfered with Haynes'

1  constitutional rights, there is a genuine issue of material fact as to the lawfulness of the
2  arrest and whether Haynes' free speech rights were violated.

3       Whether or not Morgado had cause to arrest Haynes is a jury question that
4  hinges on conflicting testimony and evidence surrounding Haynes' alleged intoxication.
5  As for Haynes' speech toward Officer Morgado – calling him a "fucking faggot" – falls
6  within the scope of First Amendment protection under the Ninth Circuit's standard.
7  Profanity directed at the police is protected under the First Amendment unless it is likely
8  to incite violence or produce a "clear and present danger."  See United States v.
9  Poocha, 259 F.3d 1080 (9th Cir. 2001) (citations omitted).  Generally, "fighting words,"
10 which are words likely to provoke "an immediate violent response," are not protected.
11 Gooding v. Wilson, 405 U.S. 518, 528 (1972).  There is a narrower application of the
12 "fighting words doctrine" when applied to police officers because they are expected "to
13 exercise a higher degree of restraint than the average citizen, and thus be less likely to
14 respond belligerently to fighting words."  Poocha, 259 F.3d at 1080-81 (quoting City of
15 Houston v. Hill, 482 U.S. 451, 462 (1987)).

16      Several cases tackling this issue are analogous to this case.  For example, in
17 Poocha, after a park ranger ordered Poocha to disperse from a crowd, Poocha
18 clenched his fists and said to the ranger, "fuck you," and "that's fucked."  Poocha, 259
19 F.3d at 1079.  The court held that Poocha's speech was protected because it wasn't
20 likely to incite violence, even though Poocha's words were derogatory to the police and
21 accompanied by physical gestures.  Id. at 1082.  Similarly, in Gulliford v. Pierce County,
22 the defendant told the police – who were responding to complaints about a beach party
23 – "get the fuck off the island."  136 F.3d 1345, 1350 (9th Cir. 1998).  The Ninth Circuit
24 held that the defendant's words were not fighting words.  Id.  Defendants' reliance on
25 DiGiambattista v. Doherty, is misplaced.  See 897 F.Supp. 649 (D. Mass. 1995). While
26 the court in that case found the use of the words "fucking queer," which are similar to
27 the words Haynes admits that he used, to be outside of the scope of First Amendment
28 protection, the words were directed at a family member, not a police officer.  Id. at 652.

11

1   In this case, Haynes directed his words at a police officer, who should be expected to

2   exercise self-restraint when confronted with such an insult.  See Poocha, 259 F.3d at

3   1080-81.  The nature of the specific insults, i.e., whether Haynes called Morgado a "little

4   bitch" or just called him a "fucking faggot" turns on a dispute of testimony, since the

5   video evidence picks up only after Haynes appears to be walking away from Morgado

6   while calling him a  "fucking faggot."  But taken in the light most favorable to Haynes –

7   that he only said the later – his words fall within the Ninth Circuit's standard for First

8   Amendment protection.

9          Accordingly, Haynes has sufficient evidence from which a reasonable jury could

10  conclude that Officer Morgado interfered with his protected rights through coercion or

11  force.  The court finds that defendants' motion for summary judgment must be DENIED

12  as to this claim.

13             3.     California Civil Code § 51.7 Claim

14          Finally, defendants move to dismiss Haynes' § 51.7 claim, claiming that Haynes

15  fails to demonstrate any evidence that Morgado acted on the basis of racial animus.

16          Cal. Civ. Code § 51.7 establishes a right to be free from violence on account of

17  race, among other protected categories.  Under § 51.7, a plaintiff must prove that his

18  race was "a motivating reason" for the defendants' conduct.  Austin B. v. Escondido

19  Union School Dist., 149 Cal. App. 4th 860, 881 (2007).

20          As evidence of racial animus, Haynes points to Morgado allegedly calling him

21  "boy."  Thus, the primary issue is whether Morgado's alleged use of the term "boy" –

22  standing alone – is sufficient evidence of race as a motivating factor for the arrest and

23  use of force.  The defendants argue that the use of the term "boy," standing alone, is

24  insufficient to withstand summary judgment.

25          There is little authority pointing to the sufficiency of evidence needed to survive

26  summary judgment on a claim of racially motivated violence under § 51.7.  One case

27  has held that a mere difference in race between plaintiff and defendant, without any

28  other evidence or facts, is insufficient to support allegations of racial animus under

12

§ 51.7.  See <u>Duncan v. County of Sacramento</u>, 2008 WL 539944, at *6 (E.D. Cal. February 25, 2008).  Thus, the fact that Haynes is African American while Morgado is not, would be insufficient evidence of racial animus to support Haynes' § 51.7 claim. Also, in <u>Herve v. City and County of San Francisco</u>, the court found that in a case involving an alleged racially motivated conspiracy of police officers, one officer's use of a racial slur was insufficient to support an inference of racial animus as to all of the officers acting collectively.  2004 WL 2806165, at * 5-6 (N.D. Cal. Dec. 7, 2004). However, the discussion in that case concerning § 51.7 is brief and focuses primarily on racial animus under 42 U.S.C. § 1985.

In contexts other than § 51.7, courts have found the use of the term "boy" to be evidence of racial animus.  For example, the Supreme Court has held that in an employment discrimination claim under Title VII and 42 U.S.C. § 1981, a supervisor calling an African American employee "boy" on repeated occasions could be evidence of discrimination sufficient to withstand judgment as a matter of law.  <u>See</u> <u>Ash v. Tyson Foods, Inc.</u>, 546 U.S. 454 (2006).  The Court explained, "Although it is true that [boy] will not always be evidence of racial animus, it does not follow that the term, standing alone, is always benign.  The speaker's meaning may depend on various factors, including, context, inflection, tone of voice, local custom, and historical language."  <u>Id.</u> at 456.

By analogy, if a jury finds that Morgado indeed used the term "boy," it could thus be reasonable depending on the context to infer that racial animus may have been a motivating factor in the use of force and ensuing arrest.  Accordingly, Haynes has met his burden of demonstrating a genuine issue of material fact concerning his § 51.7 claim, and summary judgment is DENIED as to this claim.

4.  <u>Doe Defendants</u>

As noted at the hearing, the doe defendants are all dismissed from this action with prejudice, as the deadline for amending the complaint has long passed.

//

1      5.     Motion for Seal

2          Finally, as noted at the hearing, defendants' motion to file their supporting

3  materials under seal is GRANTED.

4                              **CONCLUSION**

5          In accordance with the foregoing, the motion for partial summary judgment is

6  GRANTED in part and DENIED in part.  Specifically, summary judgment is GRANTED

7  in favor of defendants as to Haynes' § 1983 claims against the City and Chief Fong in

8  her official capacity.  Summary judgment is DENIED as to Haynes' § 52.1 and § 51.7

9  claims against Officer Morgado.

10         **IT IS SO ORDERED**

11  Dated: July 28, 2010

12                                    _____
                                     PHYLLIS J. HAMILTON
13                                   United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28